**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**Raleigh Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Karl William Schwarz and Shauna Lynne | ) | |
| Schwarz, | ) | Chapter 7 |
| | ) | Case No. 09-10206-8-SWH |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Americorp Financial, L.L.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No.:  15-000440-8-SWH |
| | ) | |
| Karl William Schwarz and Shauna Lynne | ) | |
| Schwarz | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COMPLAINT AND COUNTERCLAIM

### Introduction

After cloaking his corporate medical practice (the "Practice") in the protections of the Forbearance Agreement for years, the Defendants now ask this Court to determine that the consideration for the Forbearance Agreement, their personal guaranty of the Forbearance Agreement debt, violated the discharge injunction and is an unenforceable reaffirmation agreement in violation of section 524(c) of the Bankruptcy Code.  Defendants' disingenuous position asks this Court to allow them to use section 524(c) of the Bankruptcy Code as a sword against Americorp, whose protection and assistance they sought more than three years after obtaining the Discharge.  It flies in the face of both reason and law.

Defendant Shauna Schwarz did not owe any debt to Americorp prior to the Petition Date because she was not a principal obligor or guarantor of the obligations created by the Agreements (defined below).  In fact, the first time Americorp and Shauna created a relationship was when she executed the Forbearance Agreement Guaranty more than three years and three

months after her Discharge.  Defendant Karl Schwarz guaranteed the obligations under the Agreements and obtained a Discharge of his personal liability.  Americorp never attempted to collect the discharged pre-petition debt from Karl Schwarz.  Instead, when the Practice requested a new agreement years later, the Forbearance Agreement, Americorp agreed on the condition that Defendants provide guaranties of the new liability, which they agreed to do.  These facts are not in dispute and they support unequivocal determinations, as a matter of law, that (1) Americorp did not violate the discharge injunction and (2) the Forbearance Agreement Guaranty is not an unenforceable reaffirmation agreement in violation of section 524(c) of the Bankruptcy Code.

In support of its Motion for Summary Judgment on Complaint and Counterclaim, Americorp states as follows:

<u>**Statement of Undisputed Facts**</u>

**I.      The Prepetition Agreements**

Between August 29, 2007 and October 22, 2008, Karl W. Schwarz, M.D., P.C. (the "Practice") leased from Americorp certain pieces of sophisticated medical equipment essential to the Practice and its ability to service its patients pursuant to a series of seven equipment finance agreements (together, the "Agreements").  Copies of the Agreements are attached hereto as Exhibit A.  *See* Complaint [A.P. D.E. 1] at ¶ 5 and Answer to Complaint and Counterclaim [A.P. D.E. 8] (the "Answer") at ¶ 5 and Counterclaim at ¶ 1.  Defendant, Dr. Karl W. Schwarz ("Karl"), the Chief Executive Officer of the Practice, guaranteed the Practice's obligations for each of the Agreements.  *See* Complaint [A.P. D.E. 1] at ¶ 6; Answer [A.P. D.E. 8] at ¶ 6 and Counterclaim [A.P. D.E. 8] at ¶ 1.  Defendant Shauna Schwarz ("Shauna"), Karl's wife, did not guaranty the Practice's obligations under any of the Agreements.  *See* Exhibit A, Agreements.

## II.     The Defendants' Bankruptcy Case

On November 23, 2009 (the "Petition Date"), Defendants filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") with the Court.  Complaint [A.P. D.E. 1] at ¶ 7; Answer [A.P. D.E. 8] at ¶ 7 and Counterclaim [A.P. D.E. 8] at ¶ 1.  The Practice was not in default of the primary obligations under the Agreements on the Petition Date, and the Defendants bankruptcy case was completely unrelated to the Agreements or Karl's guaranty of the Agreements.  Exhibit B, Affidavit of Thomas X. Dunigan, III, President of Americorp ("Dunigan Affidavit") at ¶ 3.  During the Defendants' chapter 7 proceeding, the Practice continued to make all payments required under the Agreements.  Complaint [A.P. D.E. 1] at ¶ 9; Answer [A.P. D.E. 8] at ¶ 9 and Counterclaim [A.P. D.E. 8] at ¶ 1.  On March 10, 2010, Defendants received a discharge [D.E. 17] (the "Discharge") under section 727 of the Bankruptcy Code.  Complaint [A.P. D.E. 1] at ¶ 8; Answer [A.P. D.E. 8] at ¶ 8.

## III.    Events Leading to Execution of the Forbearance Agreement

In late 2012, three years after the Petition Date and over two years after the Discharge date, the Practice defaulted under the Agreements.  Complaint [A.P. D.E. 1] at ¶ 10; Answer [A.P. D.E. 8] at ¶ 10.  During the early months of 2013, Americorp began discussing a potential forbearance agreement with Karl, solely in his capacity as Chief Executive Officer of the Practice, and the Practice's operations manager.  Complaint [A.P. D.E. 1] at ¶ 11; Answer [A.P. D.E. 8] at ¶ 11.  Americorp agreed to forbear from exercising its remedies under the Agreements against the Practice, subject to an assurance of future performance.  Complaint [A.P. D.E. 1] at ¶ 11 and Ex. B, Dunigan Affidavit at ¶ 4.  In May of 2013, Americorp confirmed with the Practice that Defendants' personal guaranty of the forbearance agreement would be sufficient further assurance of payment.  Complaint [A.P. D.E. 1] at ¶ 12; Answer [A.P. D.E. 8] at ¶ 12.

3

## IV.     The Terms of the Forbearance Agreement

On June 12, 2013, over three years after the Discharge, Americorp, the Practice and Defendants, as guarantors, entered into a Forbearance Agreement and Guaranty (the "Forbearance Agreement").  Complaint [A.P. D.E. 1] at ¶ 13; Answer [A.P. D.E. 8] at ¶ 13.  A copy of the Forbearance Agreement is attached hereto as Exhibit C.  The Forbearance Agreement provided significant financial accommodations to the Practice by lowering the Practice's gross monthly payments, extending the lease payment terms, and waiving various contractual damages, attorney fees, and default interest.  Ex. C, Forbearance Agreement at ¶ 3; Ex. B, Dunigan Affidavit at ¶ 5.  Defendants executed the Joint Guaranty of Forbearance Agreement (the "Forbearance Agreement Guaranty") to induce Americorp to enter into the Forbearance Agreement with the Practice.  Ex. C, Forbearance Agreement at p. 5.  The Guaranty was prospective only and did not obligate the Defendants for any surety obligation owed prior to their discharge.  Complaint [A.P. D.E. 1] at ¶ 14 and Ex. B, Dunigan Affidavit at ¶ 6.

## V.     The Adversary Proceeding

On November 24, 2015, Plaintiff filed the Adversary Complaint for Declaratory Judgment Regarding Debtors' Guaranty of Forbearance Agreement Dated June 12, 2013 (the "Complaint") [D.E. 1], seeking declaratory relief that the injunction under section 524(a) of the Bankruptcy Code does not apply to a guaranty of the Forbearance Agreement entered into by the Defendants over three years after a discharge was issued in their chapter 7 proceeding.  On February 17, 2016, the Defendants filed their Answer to Complaint and Counterclaim [D.E. 8].  The Counterclaim seeks a determination that the Forbearance Agreement and Guaranty failed to comply with 11 U.S.C. § 524(c)(1)-(6) and damages.  Counterclaim [A.P. D.E. 8] at pp. 3-4.

204949843.4 06202/177166

## **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, authorizes a party to move for summary judgment, identifying each claim or defense, or the part of each claim or defense, on which summary judgment is sought. Fed. R. Civ. P. 56(a). The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including documents, affidavits or declarations, and admissions, or other materials. Fed. R. Civ. P. 56(c)(1)(A). "The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact." *In re Persinger*, 2016 U.S. Dist. LEXIS 110520, *10 (E.D.N.C. Aug. 3, 2016), *citing*, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring a trial." *Persinger*, 2016 U.S. Dist. LEXIS 110520, *10, *citing*, *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-587 (1986) and *United States v. Monsanto Co.,* 858 F.2d. 160, 171 (4th Cir. 1988). At the summary judgment stage, the court's function "'is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Persinger, supra* at *11*, citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Judgment as a matter of law is warranted where "'the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture.'" *Persinger, quoting Myrick v. Prime Ins. Syndicate, Inc.,* 395 F.3d 485, 489 (4th Cir. 2005).

<u>**Argument**</u>

I.     **THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND JUDGMENT SHOULD BE ENTERED IN FAVOR OF AMERICORP AS A MATTER OF LAW.**

With limited exceptions, a discharge under section 727(a) of the Bankruptcy Code "discharges the debtor from all debts that arose before the date of the order for relief" under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 727(b). Debt means "liability on a claim."[1] 11 U.S.C. § 101(12). A discharge operates as an injunction against acts to collect such debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). With limited exception, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Nothing in subsections (c) and (d) of section 524 of the Bankruptcy Code prevents a debtor from voluntarily repaying any debt. 11 U.S.C. § 524(f).

A.     **There Is No Genuine Issue of Material Fact that Shauna's Forbearance Agreement Guaranty Did Not Violate the Discharge Injunction and Judgment Must be Entered in Favor of Americorp on the Complaint and Count II of the Counterclaim as a Matter of Law.**

Shauna did not sign the Practice's pre-petition Agreements or guaranty the Practice's obligations under the Agreements prior to the Petition Date. See Exhibit A to the Complaint [D.E. 1, pp. 7-14] and Exhibit A hereto. Therefore, prior to the Petition Date, Shauna did not owe a debt to Americorp, and Americorp did not have any claims against her. The plain language of Section 727(b) compels the conclusion, as a matter of law, that Shauna did not obtain a discharge of debts owed to Americorp prior to the Petition Date because she did not owe **any** debt to Americorp prior to the Petition Date. 11 U.S.C. § 727(b); 11 U.S.C. 101(12); and 11 U.S.C. § 101(5). The Court must, as a matter of law, find that Shauna's Forbearance Agreement Guaranty did not violate the discharge injunction, and must enter judgment in Americorp's favor

---

[1]     The term "claim" means, but is not limited to, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

on the Complaint and the second claim for relief of the Counterclaim (damages for violations of

the discharge injunction).

>    **B.    There Is No Genuine Issue of Material Fact that Shauna's Forbearance Agreement Guaranty Was Not an Unenforceable Reaffirmation Agreement Pursuant to Section 524(c) and Judgment Should Be Entered in Americorp's Favor on the First Claim for Relief in the Counterclaim as a Matter of Law.**

Section 524(c) of the Bankruptcy Code provides that "[a]n agreement between a holder

of a claim and the debtor, *the consideration for which, in whole or in part, is based on a debt*

*that is dischargeable* in a case under this title is enforceable only to any extent enforceable under

applicable nonbankruptcy law . . . only if" the requirements of subparagraphs (1) through (6)

have been satisfied.  11 U.S.C. § 524(c) (emphasis added).  As discussed above, Shauna did not

owe any debt to Americorp prior to the Petition Date.  As there was no pre-petition obligation to

be reaffirmed, a reaffirmation agreement was not required.  Shauna's Forbearance Agreement

Guaranty cannot constitute an unenforceable reaffirmation agreement and, as a matter of law,

judgment must be entered in Americorp's favor on the Counterclaim's first claim for relief

(unenforceable reaffirmation agreement) [A.P. D.E. 8, pp. 2-3].  11 U.S.C. § 524(c); *Lebarron v.*

*Southgate Mansory and Lumber, Inc. (In re Lebarron)*, 2011 Bankr. LEXIS 35950, *4 (Bankr.

W.D.N.C., Sept. 16, 2011) (debts incurred by debtor's business were business debts, not personal

debts of the debtor, and, therefore, not subject to the discharge order entered in debtor's

individual bankruptcy case; creditor did not willfully violate the discharge injunction of section

524 when it entered the forbearance agreement with debtor, had debtor sign confession of

judgment, collected payments, and sought enforcement of confession of judgment against debtor

when payments ceased).

C.    **There Is No Genuine Issue of Material Fact that Karl's Forbearance Agreement Guaranty Did Not Violate the Discharge Injunction and Judgment Should be Entered in Favor of Americorp on the Complaint and Count II of the Counterclaim as a Matter of Law.**

1.    **Americorp Has Not Violated the Discharge Injunction.**

Americorp has never attempted to collect discharged debt from Karl. Ex. B, Dunigan Affidavit at ¶ 7. It did not threaten him with collection actions based upon the pre-petition guaranty of Agreements. *Id.* at 8. It did not send Karl dunning letters, make harassing phone calls, or approach Karl seeking repayment of any debt owed under the pre-petition Agreements. *Id.* at 9. Instead, when the Practice defaulted under the Agreements, Americorp engaged in discussions with the Practice's business manager and Karl, solely in his capacity as Chief Executive Officer of the Practice, regarding a potential forbearance agreement so that the Practice would continue to have the use of necessary medical equipment. Complaint [A.P. D.E. 1] at ¶ 11; Answer [A.P. D.E. 8] at ¶ 11. In order to induce Americorp to enter into the Forbearance Agreement with the Practice, to prevent Americorp from repossessing the leased medical equipment, and to obtain lower monthly payments and extended payment terms from Americorp, Karl and Shauna each agreed to provide the Forbearance Agreement Guaranty more than three years after the Discharge. Even after the Practice defaulted under the Forbearance Agreement, Americorp did not threaten Defendants with collection action, but instead filed the present action. Ex. B, Dunigan Affidavit at ¶ 10.

Bankruptcy court authorization was not required for the parties to enter the Forbearance Agreement Guaranty, an entirely new post-discharge agreement enforceable as a matter of law. Entering into the Forbearance Agreement Guaranty did not violate the discharge injunction. *See*, *Dubois v. Ford Motor Credit Co.*, 276 F.3d 1019 (8th Cir. 2002) (holding that debtors' voluntary agreement to pay fees owed under first lease in a second post-discharge lease did not violate section 524 of the Bankruptcy Code); *In re Petersen*, 110 B.R. 946, 950 (Bankr. D. Colo. 1990)

8

("Parties who have engaged in contractual relations prior to the filing of a bankruptcy petition may enter into a new agreement which is effective after the date of the petition without obtaining authorization from the Bankruptcy Court."), *citing*, *In re White Motor Corp.*, 831 F.2d 106 (6th Cir. 1987).  Because Americorp did not take action to collect a discharged debt or the debt owed under the Forbearance Agreement Guaranty, and because the Forbearance Agreement Guaranty did not violate the discharge injunction, judgment must be entered in Americorp's favor on the Complaint and the second claim for relief asserted in the Counterclaim.

> **D.      The Forbearance Agreement Guaranty Is Not an Unenforceable Reaffirmation Agreement and Judgment Must Be Entered in Americorp's Favor on the First Claim for Relief Asserted in the Counterclaim.**

Only now, years after execution of and only after the Practice again defaulted under its agreements, have Defendants[2] asserted that the Forbearance Agreement Guaranty is an unenforceable reaffirmation agreement in violation of section 524 of the Bankruptcy Code.  The plain language of section 524(c) provides that reaffirmation agreements are only required when the consideration for the agreement "in whole or in part, is based on a debt that is dischargeable." 11 U.S.C. § 524(c).  Several other courts have, under similar circumstances, determined that post-discharge agreements did not violate the discharge injunction and were not unenforceable reaffirmation agreements.  *See*, *e.g.*, *Dubois v. Ford Motor Credit Co.*, 276 F.3d 1019 (8th Cir. 2002); *In re Petersen*, 110 B.R. 946, 950 (Bankr. D. Colo. 1990); and *Minster State Bank v. Heirholzer (In re Heirholzer)*, 170 B.R. 938 (Bankr. N. D. Ohio 1994).

In *DuBois*, *supra*, the United States Court of Appeals for the Eighth Circuit affirmed the district court's dismissal of the DuBoises' complaint, which alleged that Ford Motor Credit

---

[2]      Americorp raises the arguments in this section with respect to Shauna in the event that the Court determines that Shauna obtained a discharge of pre-petition debt owed to Plaintiff, which she did not.

Company ("Ford Credit") violated section 524 of the Bankruptcy Code, the discharge injunction and the Fair Debt Collection Practices Act when it (a) accepted payments on a pre-petition automobile lease for thirteen months after discharge when the lease had not been reaffirmed; (b) sent post-discharge payment reminders; and (c) required the DuBoises to pay fees owed under the first lease as a condition of entering into a second post-discharge lease. The DuBoises filed suit after making payments on the second lease for two and one-half years. The Eighth Circuit agreed with the district court that the "DuBoises voluntarily agreed to pay the excess mileage and wear and tear fees when they entered into the second lease." *DuBois*, 276 F.3d at 1023. The Eighth Circuit considered it important that the DuBoises: (i) initiated contact with Ford Credit to obtain the second lease, (ii) did not allege that they were coerced or otherwise induced by Ford Credit to pay the fees, and, (iii) did not allege that Ford Credit threatened collection efforts. *Id.* Noting that Ford Credit "was under no obligation to enter into another financing agreement with the DuBoises following their discharge," the Court determined that it was not coercive to require payment of fees associated with the first lease in connection with the second. Based upon these facts, the Eighth Circuit held that the DuBoises failed to state a claim for violation of section 524 of the Bankruptcy Code. *Id.* at 1024. Here, as in *DuBois*, the Defendants voluntarily provided the Forbearance Agreement Guaranty, do not allege that they were induced or coerced by Americorp to do so, and do not allege that they were threatened with collection actions and Section 524 of the Bankruptcy Code was not violated.

Similarly, in *Petersen, supra*, the debtor, a sophisticated and experienced businessman entered into a pre-petition lease agreement for a commercial building with Stephen Slezak ("Slezak"). *Petersen*, 110 B.R. at 947. Three months later, the debtor filed his chapter 7 bankruptcy and five months after the petition date obtained a discharge. *Id.* One month after obtaining the discharge, at which time the debtor was current on rent payments, the debtor and

Slezak entered into a lease addendum, which reinstated and reaffirmed the pre-petition lease. *Id.* For nearly two years thereafter, the debtor made payments under the lease addendum. *Id.* After the debtor defaulted and Slezak commenced a lawsuit for rent, the debtor filed a motion to show cause arguing that the lease addendum was an unenforceable reaffirmation agreement because it did not comply with section 524(c) of the Bankruptcy Code. *Id.* at 948.

After determining that "neither the Bankruptcy Code nor the purpose and intent of the Code provisions" supported the debtor's position, and after concluding that the debtor was "attempting to use the reaffirmation provisions of the Bankruptcy Code as a sword against the Creditor rather than the shield that was intended," the court held:

> Where, as here, an informed Chapter 7 debtor elects, post-petition to adopt and continue a pre-petition lease agreement rejected by the trustee, and there is legally sufficient post-petition consideration between the parties, then the lease will be deemed a binding, enforceable post-petition obligation of the debtor. It will not be deemed or construed to be a reaffirmation agreement subject to and contingent on Section 524(c) and (d). This reasoning and result is particularly appropriate where, as here, the Debtor evidently acted with assistance or access to his counsel and the Lease was not in default.

*Petersen* at 949-950. The *Petersen* Court also found it "disingenuous" for the debtor to abide the terms of the lease addendum for such a long period of time, and then request that the court find Slezak in contempt for treating the lease addendum as enforceable. *Id*. at 951. The *Petersen* Court concluded that the creditor had not willfully or knowingly violated the discharge provisions of section 524 or any other section of the Bankruptcy Code, and that no grounds existed for finding Slezak in contempt. *Id.* (citations omitted).

As in *Petersen*, the Defendants here are attempting to use the reaffirmation provisions of the Bankruptcy Code as a sword and not a shield. Defendants entered into the Forbearance Agreement Guaranty years after obtaining a discharge, laid in wait for more than two years while the Practice performed under the terms of the Forbearance Agreement, and only when the

Practice defaulted did they seek a determination that the Forbearance Agreement was not enforceable under section 524(c) of the Bankruptcy Code and that Plaintiff violated the discharge injunction thereof.  These Defendants, sophisticated, educated, and informed individuals, elected to enter into new agreements with Plaintiff, received substantial consideration for those agreements, and cannot now claim their agreements are unenforceable once their obligations have come due.  Judgment in favor of Americorp on the Complaint and on the Counterclaim is warranted, as a matter of law.

Following *Petersen,* in *Minster State Bank v. Heirholzer (In re Heirholzer)*, 170 B.R. 938 (Bankr. N. D. Ohio 1994), the Bankruptcy Court for the Northern District of Ohio considered whether a post-discharge promissory note and accompanying mortgage executed three weeks after debtor's discharge and given in consideration of bank's agreement not to foreclose on pre-petition mortgage constituted a previously discharged debt.  *Heirholzer* at 939-940.  After determining that the second note failed to reaffirm the discharged debt because it was executed after the discharge was entered, the court considered "whether the second note was a new contract supported by good and sufficient consideration." *Id.* at 940.  The court determined that the "pivotal factor" to "establish a valid post discharge contract is the existence of some separate consideration for the subsequent agreement."  *Id.* (citation omitted).  The *Heirholzer* court determined that the:

> decision to forego foreclosure represents new and sufficient consideration to support a binding post-discharge obligation.  It has been long established that a decision to forbear a valid legal claim provides sufficient consideration to support an agreement between two (2) parties. . . . Thus, this Court views this second note as a valid contract that is completely separate from the initial note that was discharged in bankruptcy.

*Id.* at 941 (*citation omitted*).  In determining that the second note was a valid debt because it constituted a new contract supported by good and sufficient consideration, the court found it particularly persuasive that the parties had executed an entirely new set of documents to initiate

the subsequent agreement. *Id.* The Court reasoned that if an addendum added to the original agreement could be sufficient when supported by new consideration as in *Petersen*, a stronger argument existed where the parties went to the trouble of executing an entirely new set of documents. *Id.*

The Forbearance Agreement Guaranty was also entirely new documentation of a new agreement between parties with a previous relationship (Karl and Americorp) and parties commencing a new relationship (Shauna and Americorp). Defendants entered into the Forbearance Agreement Guaranty three years after the Discharge (not three weeks later like in *Heirholzer*). It was supported by new consideration in the form of Americorp's forbearance of its legal rights against the Practice and financial accommodations to the Practice, including, but not limited to lowering the Practice's monthly payments, extending the repayment terms, and waiving certain contractual damages, attorney fees and default interest.[3] Moreover, it enabled Karl to sustain his livelihood by enabling his Practice to continue to use Americorp's collateral. These facts are not in dispute. As a matter of law the Forbearance Agreement Guaranty is a new

---

[3]    *See also, Restatement Third of Suretyship & Guaranty*, § 9:

(1) Except as provided in subsection (2), the requirement of consideration for secondary obligations is the same as for contracts generally.

(2) A secondary obligation does not fail for lack of consideration if:

    (a) the underlying obligation is supported by consideration and the later creation of the secondary obligation was part of the exchange for which the obligee bargained; or

    (b) the promise of the secondary obligor is in writing and signed by the secondary obligor and recites a nominal purported consideration; or

    (c) the promise of the secondary obligor is made binding by statute; or

    (d) the secondary obligor should reasonably expect its promise to induce action or forbearance of a substantial character on the part of the obligee or a third person, and the promise does induce such action or forbearance.

13

and enforceable post-discharge contract.    Americorp has not violated section 524 of the Bankruptcy Code.

### 1.    Distinguishable cases determining new post-discharge agreements to be unenforceable reaffirmation agreements.

Having received the benefit of their bargains for over three (3) years, the Defendants now ask the Court to determine that the Forbearance Agreement Guaranty is an unenforceable reaffirmation agreement in violation of Section 524(c) of the Bankruptcy Code and the discharge injunction, presumably relying upon cases determining that the post-discharge agreement was based in whole or in part upon debt that was discharged.  *See, e.g., Weeks v. Isabella Bank Corporation (In re Weeks)*, 400 B.R. 117 (Bankr. W.D. Mich. 2009); *Republic Bank California, N.A. v. Getzoff (In re Getzoff)*, 180 B.R. 572 (B.A.P. 9th Cir. 1995).

As discussed below, however, under significantly different factual circumstances than those present here, these cases assume without significant analysis that where a pre-petition guaranty existed, a post-discharge guaranty must be based upon the discharged debt and, as a result, they determine that post-discharge guaranties are unenforceable reaffirmation agreements violating the discharge injunction.  For example, in *In re Weeks*, *supra*, Dr. Weeks guaranteed his medical practice's indebtedness to the bank.  *Weeks* at 119.  When the practice's line of credit came due a few months after the petition date, the bank renewed the line of credit and had Dr. Weeks sign a new guaranty.  *Id.*  Dr. Weeks executed the guaranty "by coincidence" a few days after receiving his chapter 7 discharge.  *Id.*  The guaranty was on the same bank form as the pre-petition guaranties and Dr. Weeks guaranteed and promised to pay the bank all indebtedness owing by his practice "no matter when incurred."  *Id.* at 119-120.  Fifteen months later, after the medical practice's line of credit had expired and payment was due by several months, the bank consolidated the line of credit and a term loan into a new term note with an extended maturity date and required Dr. Weeks to sign another comprehensive guaranty.  *Id.* at 120.  A few weeks

14

later, the medical practice ceased operations and Dr. Weeks began personally paying the monthly obligations under the new note. *Id.* Dr. Weeks filed an adversary proceeding alleging that the bank's demand for payment after he stopped paying the new note violated the discharge injunction and that both of the post-petition guaranties were unenforceable because they were reaffirmation agreements that did not comply with section 524(c) of the Bankruptcy Code. *Id.*

The *Weeks* court acknowledged both that "the Bankruptcy Code will not impede an existing creditor from entering into another lending relationship with a newly discharged debtor," but that "Section 524(c) strictly prohibits such creditors from using the new loan to leverage the reaffirmation of previously discharged debt without there also being compliance with Section 524(c)." *Id.* at 122. Because the *Weeks* court concluded that that the loan consolidation "simply altered an obligation that Dr. Weeks had already guaranteed," it also concluded that Dr. Weeks "previous discharge continued to enjoin Isabella Bank's post-petition efforts to procure repayment of the [term loan] from Dr. Weeks regardless of whether modifications had been made to it. *Id.* at 125. The Court denied the bank's motion for summary judgment and permitted Dr. Weeks to proceed against the bank for damages. *Id.* at 126.

The *Weeks* case is factually distinguishable from this case. Here, the obligations guaranteed were not a consolidated line of credit and term note and the Defendants' Forbearance Agreement Guaranty was not executed within days of the Discharge. Rather, the Forbearance Agreement Guaranty was executed three (3) years after Discharge. The Defendants' Forbearance Agreement Guaranty was not on the same form as the pre-petition guaranty. The Defendants' Forbearance Agreement Guaranty was prospective only and was not a guaranty of all indebtedness "no matter when incurred." And, more importantly, Defendants never made any payments to Americorp on account of the Forbearance Agreement Guaranty and Americorp did not attempt to enforce the Forbearance Agreement Guaranty against either Defendant. Each of

these distinctions compels the conclusion that Defendants' Forbearance Agreement Guaranties were new contractual relationships unimpeded by the Bankruptcy Code. *Weeks* at 122.

In *Getzoff*, Getzoff Accountancy Corporation ("GAC") obtained a loan from the bank in November 1991, which Stephen Getzoff, the sole owner of GAC, guaranteed and promised to pay "any and all indebtedness" owed by GAC. *Getzoff*, 180 B.R. at 572-73. Stephen and his wife filed chapter 7 bankruptcy on April 13, 1992. *Id.* at 573. On May 20, 1992, the bank and GAC entered a new agreement under which principal was reduced and the loan was extended. *Id.* That same day, Stephen signed another guaranty of the new obligation of GAC, on a form that was identical to the first guaranty. *Id.* In December 1992, the bank asked Stephen to execute a reaffirmation agreement in support of the second guaranty and he refused. *Id.* In January 1994 when the bank and GAC stipulated to a judgment allowing GAC to extend the time for repayment, Getzoff claimed the second guaranty had been discharged in his bankruptcy. *Id.* In June 1994, the bank filed a complaint for declaratory relief seeking a declaration that the second guaranty had not been discharged. Although it found that the bank gave new consideration for the second guaranty, the bankruptcy court granted judgment in the debtor's favor and determined that the second guaranty was an improper attempt to reaffirm the discharged debt. *Id.*

With minimal analysis, the Ninth Circuit BAP concluded that the bank "extended GAC's loan in consideration for Getzoff's promise to guaranty the loan. Since the consideration for the loan extension was based on a discharged debt, Getzoff's continuing obligation to guarantee GAC's debt, the Second Guaranty, is subject to the requirements of Section 524(c)." *Id.* at 574. The Ninth Circuit BAP distinguished the *Heirholzer* decision because it "rested on the ground that the parties 'executed a completely new set of paperwork to initiate their subsequent agreement'" where, in *Getzoff*, the parties used the same forms for both guaranties. *Id.* at 575.

16

Here, unlike *Getzoff*, Defendants executed entirely new agreements more than three years and three months after the discharge; they did not execute the same pre-petition guaranties one month after the Petition Date.  Moreover, unlike Getzoff, Karl was never asked to reaffirm his obligations during the bankruptcy case, and Shauna never owed a pre-petition obligation to Americorp and was an entirely new guarantor of the Forbearance Agreement.  Finally, the debt guaranteed – debt arising under the Forbearance Agreement – was not the same debt Karl guaranteed prior to the Petition Date under the Agreements.  The Forbearance Agreement Guaranty, therefore, cannot constitute an unenforceable reaffirmation agreement, and judgment in Americorp's favor upon the first claim for relief of the Counterclaim is warranted as a matter of law.[4]

### Conclusion

The Bankruptcy Code does not prevent or prohibit creditors with previous credit relationships, such as Karl and Americorp, from entering into new contracts or new credit transactions.  The Bankruptcy Code also does not prohibit parties such as Shauna and Americorp, who have never before contracted, from entering into new contracts after one of them obtains a bankruptcy discharge.  These post-discharge contracts do not violate the discharge injunction and are not unenforceable reaffirmation agreements.  Judgment must be entered in Americorp's favor on the Complaint and the Counterclaim.

---

[4]     If this Court determines that the Defendants' Forbearance Agreement Guaranty was an unenforceable reaffirmation agreement and violated section 524 of the Bankruptcy Code, the Defendants have not suffered any damages.  The Practice and the Defendants obtained the benefits of the financial accommodations provided by the Forbearance Agreement.  Neither of the Defendants paid any money to Americorp as a result of their Forbearance Agreement Guaranties.  And, when the Practice defaulted under the Forbearance Agreement, Americorp did not initiate collection actions against the Defendants to collect upon the Forbearance Agreement Guaranty.  Instead, Americorp initiated the above-captioned action seeking a declaratory judgment from this Court that the Forbearance Agreement Guaranty did not violate the discharge injunction.  The Defendants have not been damaged under the facts present here.

204949843.4 06202/177166

Respectfully submitted,

This 12th day of September, 2016.

/s/  Joel D. Applebaum_____

Joel D. Applebaum (Admitted *Pro Hac Vice*)
Michigan State Bar No. P36774
japplebaum@clarkhill.com
151 South Old Woodward, Suite 200
Birmingham, MI 48009
(248) 642-9692
*Attorneys for Plaintiff Americorp Financial L.L.C.*

SMITH MOORE LEATHERWOOD LLP

/s/ Elizabeth Sims Hedrick_____

Elizabeth Sims Hedrick
N.C. State Bar No. 38513
elizabeth.hedrick@smithmoorelaw.com
434 Fayetteville Street, Suite 2800 (27601)
Post Office Box 27525
Raleigh, North Carolina  27611
Telephone:  (919) 755-8700
Facsimile:   (919) 755-8800
*Attorneys for Plaintiff Americorp Financial L.L.C.*
**Local Civil Rule 83.1 Counsel**

18

**CERTIFICATE OF SERVICE**

This is to certify that I have this 12th day of September, 2016, served a copy of the foregoing document as indicated below, upon the below named persons:

(X)    Served via CM/ECF e-mail Service

(  )    By delivering a copy personally

(  )    By leaving a copy at the office of such person

(  )    By telecopying said papers as indicated below

(X)    By depositing a copy of same in the United States mail, postage prepaid, addressed as shown below

(  )    By depositing a copy of same in the United States mail, postage prepaid, addressed as shown below and by electronic mail

(  )    By depositing a copy of same in the United States Mail, certified mail, return receipt requested, addressed as shown below

**SMITH MOORE LEATHERWOOD LLP**

/s/ Elizabeth Sims Hedrick
Elizabeth Sims Hedrick
N.C. State Bar No. 38513
elizabeth.hedrick@smithmoorelaw.com
434 Fayetteville Street, Suite 2800 (27601)
Post Office Box 27525
Raleigh, North Carolina 27611
Telephone: (919) 755-8700
Facsimile: (919) 755-8800
**Local Civil Rule 83.1 Counsel**
*Attorneys for Plaintiff Americorp Financial L.L.C.*

**Served On:**

| William E. Brewer, Jr. | A. Scott McKellar |
|---|---|
| **Deana M. Leggett** | Battle, Winslow, Scott & Wiley, PA |
| The Brewer Law Firm | P.O. Box 7100 |
| 311 E. Edenton Street | Rocky Mount, NC 27804-0100 |
| Raleigh, NC 27601 | smckellar@bwsw.com |
| wbrewer@williambrewer.com | *Trustee* |
| *Attorney for Karl William Schwarz and Shauna Lynne Schwarz* | |

204949843.4 06202/177166

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**Raleigh Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Karl William Schwarz and Shauna Lynne | ) | |
| Schwarz, | ) | Chapter 7 |
| | ) | Case No. 09-10206-8-SWH |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Americorp Financial, L.L.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No.:  15-000440-8-SWH |
| | ) | |
| Karl William Schwarz and Shauna Lynne | ) | |
| Schwarz | ) | |
| | ) | |
| Defendants. | | |

## EXHIBIT LIST

| **Exhibit** | **Description** |
|---|---|
| A | Agreements |
| B | Affidavit of Thomas X. Dunigan, III, President of Americorp |
| C | Forbearance Agreement and Guaranty |

204949843.4 06202/177166

# EXHIBIT A

# EQUIPMENT FINANCE AGREEMENT

Financer: Americorp Financial, LLC
877 South Adams Road
Birmingham, MI 48009
Telephone (248) 723-4500

Federal Tax ID # REDACTED

**Agreement Number** 1434901

This document was written in "Plain English". The words "you" and "your" refer to the customer. The words "we", "us" and "our" refer to the financer.

**CUSTOMER INFORMATION**
Karl W. Schwarz, M.D., P.C.

| FULL LEGAL NAME OF CUSTOMER | | DBA | | | | |
|---|---|---|---|---|---|---|
| REDACTED | Raleigh | NC | 27615 | Wake | REDACTED | |
| STREET ADDRESS | CITY | STATE | ZIP | COUNTY | PHONE | |

EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE)

**SUPPLIER INFORMATION**
See Schedule A

| NAME OF SUPPLIER | STREET ADDRESS | | |
|---|---|---|---|
| CITY | STATE | ZIP | PHONE |

| QUANTITY | ITEM DESCRIPTION | | SERIAL NUMBER |
|---|---|---|---|
| See Schedule A | | | |

**TERMS**
60
Term in months

**MONTHLY PAYMENT AMOUNT**
$1,009.46 sales tax included
Payment Period is Monthly Unless Otherwise Indicated.
Sales Tax is not included unless indicated above and it is the Customer's responsibility to pay all taxes.

**ADVANCE PAYMENT**
$1,009.46 Received
1st payment in advance

**THIS IS A NONCANCELABLE/IRREVOCABLE AGREEMENT, THIS AGREEMENT CANNOT BE CANCELLED OR TERMINATED.**
**TERMS AND CONDITIONS**
(THIS AGREEMENT CONTAINS PROVISIONS SET FORTH ON PAGE TWO, ALL OF WHICH ARE MADE PART OF THIS AGREEMENT)

**FINANCER ACCEPTANCE**
DATED: September 11, 2007

FINANCER: Americorp Financial, LLC

SIGNATURE: Thomas X. Dunigan

TITLE: President

**CUSTOMER AGREEMENT**
DATED: September 11, 2007

CUSTOMER: Karl W. Schwarz, M.D., P.C.

SIGNATURE: X

Karl W. Schwarz
Chief Executive Officer

TITLE:

## GUARANTY

As additional inducement for us to enter into the Agreement (including each Supplement), the undersigned ("Guarantor") jointly and severally unconditionally personally guarantees that the Customer will make all payments and meet all obligations required under this Agreement and any Supplements fully and promptly. Guarantor agrees that we may make other arrangements including compromise or settlement with the Customer named above. The Guarantor waives all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. We do not have to notify Guarantor if the Customer is in default. If the Customer defaults, Guarantor will immediately pay in accordance with the default provision of the Agreement all sums due under the terms of the Agreement and will perform all the obligations of the Customer under the Agreement. If it is necessary for us to proceed legally to enforce this guaranty, Guarantor expressly consents to the jurisdiction of the court set out in paragraph 15 and agrees to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against the Customer before enforcing this guaranty. By signing this guaranty, the Guarantor authorizes us to obtain personal credit bureau reports for credit and collection purposes.

X _____          Karl W. Schwarz          8 29 07
Signature                  Print Name of Guarantor          Date

X  REDACTED                 X  REDACTED
Home Address of Guarantor          Home Telephone Number of Guarantor

## ACCEPTANCE OF DELIVERY

You certify that all the equipment listed above has been furnished, that delivery and installation has been fully completed and satisfactory. Further, all conditions and terms of this agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects. You understand and agree that we have made payment for the equipment to the supplier, and you may contact the above supplier for your warranty rights, if any, which we transfer to you for the term of this Agreement.

| 09/11/07 | Karl W. Schwarz, M.D., P.C. | X | | Chief Executive Officer |
|---|---|---|---|---|
| Date of Acceptance | Customer | Signature | Karl W. Schwarz | Title |

Page 1 of 2                                    Rev. 02/06

**Financer: Americorp Financial, LLC**
877 South Adams Road
Birmingham, MI 48009
Telephone (248) 723-4500

# EQUIPMENT FINANCE AGREEMENT

**Federal Tax ID #** REDACTED

**Agreement Number** 1434902

This document was written in "Plain English". The words "you" and "your" refer to the customer. The words "we", "us" and "our" refer to the financer.

## CUSTOMER INFORMATION

Karl W. Schwarz, M.D., P.C.

| FULL LEGAL NAME OF CUSTOMER | | | DBA | | | |
|---|---|---|---|---|---|---|
| REDACTED | Raleigh | NC | 27615 | Wake | | REDACTED |
| STREET ADDRESS | CITY | STATE | ZIP | COUNTY | | PHONE |

EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE)

## SUPPLIER INFORMATION

See Schedule A

| NAME OF SUPPLIER | STREET ADDRESS | | |
|---|---|---|---|
| CITY | STATE | ZIP | PHONE |

| QUANTITY | ITEM DESCRIPTION | SERIAL NUMBER |
|---|---|---|
| See Schedule A | | |

| TERMS | MONTHLY PAYMENT AMOUNT | ADVANCE PAYMENT |
|---|---|---|
| 60 | $1,764.13 sales tax included | _____ Received |
| Term in months | Payment Period is Monthly Unless Otherwise Indicated. Sales Tax is not included unless indicated above and it is the Customer's responsibility to pay all taxes. | |

**THIS IS A NONCANCELABLE/IRREVOCABLE AGREEMENT, THIS AGREEMENT CANNOT BE CANCELLED OR TERMINATED.**
**TERMS AND CONDITIONS**
(THIS AGREEMENT CONTAINS PROVISIONS SET FORTH ON PAGE TWO, ALL OF WHICH ARE MADE PART OF THIS AGREEMENT)

| FINANCER ACCEPTANCE | CUSTOMER AGREEMENT |
|---|---|
| DATED: December 28, 2007 | DATED: December 28, 2007 |
| FINANCER: Americorp Financial, LLC | CUSTOMER: Karl W. Schwarz, M.D., P.C. |
| SIGNATURE: _Steven F. Grant_ | SIGNATURE: X _Karl W. Schwarz_ |
| TITLE: CFO | TITLE: Chief Executive Officer |

## GUARANTY

As additional inducement for us to enter into the Agreement (including each Supplement), the undersigned ("Guarantor") jointly and severally unconditionally personally guarantees that the Customer will make all payments and meet all obligations required under this Agreement and any Supplements fully and promptly. Guarantor agrees that we may make other arrangements including compromise or settlement with the Customer named above. The Guarantor waives all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. We do not have to notify Guarantor if the Customer is in default. If the Customer defaults, Guarantor will immediately pay in accordance with the default provision of the Agreement all sums due under the terms of the Agreement and will perform all the obligations of the Customer under the Agreement. If it is necessary for us to proceed legally to enforce this guaranty, Guarantor expressly consents to the jurisdiction of the court set out in paragraph 15 and agrees to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against the Customer before enforcing this guaranty. By signing this guaranty, the Guarantor authorizes us to obtain personal credit bureau reports for credit and collection purposes.

SEE AMENDMENT

| X _____ | Karl W. Schwarz | 8 29 07 |
|---|---|---|
| Signature | Print Name of Guarantor | Date |

| X REDACTED | X REDACTED |
|---|---|
| Home Address of Guarantor | Home Telephone Number of Guarantor |

## ACCEPTANCE OF DELIVERY

You certify that all the equipment listed above has been furnished, that delivery and installation has been fully completed and satisfactory. Further, all conditions and terms of this agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects. You understand and agree that we have made payment for the equipment to the supplier, and you may contact the above supplier for your warranty rights, if any, which we transfer to you for the term of this Agreement.

| 12/28/07 | Karl W. Schwarz, M.D., P.C. | X _Karl W. Schwarz_ | Chief Executive Officer |
|---|---|---|---|
| Date of Acceptance | Customer | Signature | Title |

Rev. 02/06

Financer: Americorp Financial, LLC
877 South Adams Road
Birmingham, MI  48009
Telephone (248) 723-4500

# EQUIPMENT FINANCE AGREEMENT

**Agreement Number** 1434903          **Federal Tax ID #** REDACTED

This document was written in "Plain English". The words "you" and "your" refer to the customer. The words "we", "us" and "our" refer to the financer.

## CUSTOMER INFORMATION

Karl W. Schwarz, M.D., P.C.

| FULL LEGAL NAME OF CUSTOMER | | | DBA | | |
|---|---|---|---|---|---|
| REDACTED | Raleigh | NC | 27615 | Wake | REDACTED |
| STREET ADDRESS | CITY | STATE | ZIP | COUNTY | PHONE |

EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE)

## SUPPLIER INFORMATION

See Schedule A

| NAME OF SUPPLIER | STREET ADDRESS | | | |
|---|---|---|---|---|
| CITY | STATE | ZIP | PHONE | |

**QUANTITY    ITEM DESCRIPTION    SERIAL NUMBER**
See Schedule A

**TERMS** 60
Term in months

**MONTHLY PAYMENT AMOUNT**
$1,195.60 including sales tax
Payment Period is Monthly Unless Otherwise Indicated.
Sales Tax is not included unless indicated above and it is the Customer's responsibility to pay all taxes.

**ADVANCE PAYMENT** $0.00  Received

### THIS IS A NONCANCELABLE/IRREVOCABLE AGREEMENT, THIS AGREEMENT CANNOT BE CANCELLED OR TERMINATED.
**TERMS AND CONDITIONS**
(THIS AGREEMENT CONTAINS PROVISIONS SET FORTH ON PAGE TWO, ALL OF WHICH ARE MADE PART OF THIS AGREEMENT)

**FINANCER ACCEPTANCE**
DATED: December 31, 2007
FINANCER: Americorp Financial, LLC
SIGNATURE: Steven F. Grant
TITLE: CFO

**CUSTOMER AGREEMENT**
DATED: December 31, 2007
CUSTOMER: Karl W. Schwarz, M.D., P.C.
SIGNATURE: X Karl W. Schwarz
TITLE: Chief Executive Officer

## GUARANTY

As additional inducement for us to enter into the Agreement (including each Supplement), the undersigned ("Guarantor") jointly and severally unconditionally personally guarantees that the Customer will make all payments and meet all obligations required under this Agreement and any Supplements fully and promptly. Guarantor agrees that we may make other arrangements including compromise or settlement with the Customer named above. The Guarantor waives all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. We do not have to notify Guarantor if the Customer is in default. If the Customer defaults, Guarantor will immediately pay in accordance with the default provision of the Agreement all sums due under the terms of the Agreement and will perform all the obligations of the Customer under the Agreement. If it is necessary for us to proceed legally to enforce this guaranty, Guarantor expressly consents to the jurisdiction of the court set out in paragraph 15 and agrees to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against the Customer before enforcing this guaranty. By signing this guaranty, the Guarantor authorizes us to obtain personal credit bureau reports for credit and collection purposes.

X ____   Karl W. Schwarz   8 29 07
Signature     Print Name of Guarantor     Date

X REDACTED   X REDACTED
Home Address of Guarantor     Home Telephone Number of Guarantor

## ACCEPTANCE OF DELIVERY

You certify that all the equipment listed above has been furnished, that delivery and installation has been fully completed and satisfactory. Further, all conditions and terms of this agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects. You understand and agree that we have made payment for the equipment to the supplier, and you may contact the above supplier for your warranty rights, if any, which we transfer to you for the term of this Agreement.

12/31/07   Karl W. Schwarz, M.D., P.C.   X ____ Karl W. Schwarz   Chief Executive Officer
Date of Acceptance   Customer   Signature   Title

Page 1 of 2     Rev. 02/06

# EQUIPMENT FINANCE AGREEMENT

Financer: Americorp Financial, LLC
877 South Adams Road
Birmingham, MI 48009
Telephone (248) 723-4500

Federal Tax ID # REDACTED

**Agreement Number** 1434904

This document was written in "Plain English". The words "you" and "your" refer to the customer. The words "we", "us" and "our" refer to the financer.

## CUSTOMER INFORMATION

Karl W. Schwarz, M.D., P.C.
FULL LEGAL NAME OF CUSTOMER

| | DBA | | |
|---|---|---|---|

| REDACTED | Raleigh | NC | 27615 | Wake | REDACTED |
|---|---|---|---|---|---|
| STREET ADDRESS | CITY | STATE | ZIP | COUNTY | PHONE |

EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE)

## SUPPLIER INFORMATION

See Schedule A
NAME OF SUPPLIER                    STREET ADDRESS

| | STATE | ZIP | PHONE |
|---|---|---|---|
| CITY | | | |

| QUANTITY | ITEM DESCRIPTION | SERIAL NUMBER |
|---|---|---|

See Schedule A

**TERMS**
60
Term in months

**MONTHLY PAYMENT AMOUNT**
$1,439.67 Sales Tax Included
Payment Period is Monthly Unless Otherwise Indicated.
Sales Tax is not included unless indicated above and it is
the Customer's responsibility to pay all taxes.

**ADVANCE PAYMENT**
$0.00 ___ Received

## THIS IS A NONCANCELABLE/IRREVOCABLE AGREEMENT, THIS AGREEMENT CANNOT BE CANCELLED OR TERMINATED.

### TERMS AND CONDITIONS
(THIS AGREEMENT CONTAINS PROVISIONS SET FORTH ON PAGE TWO, ALL OF WHICH ARE MADE PART OF THIS AGREEMENT)

**FINANCER ACCEPTANCE**
DATED: 1/18/2008

FINANCER: Americorp Financial, LLC

SIGNATURE: _____
Thomas X. Dunigan
TITLE: President

**CUSTOMER AGREEMENT**
DATED: 1/18/2008

CUSTOMER: Karl W. Schwarz, M.D., P.C.

SIGNATURE: X _____
Karl W. Schwarz
TITLE: Chief Executive Officer

## GUARANTY

As additional inducement for us to enter into the Agreement (including each Supplement), the undersigned ("Guarantor") jointly and severally unconditionally personally guarantees that the Customer will make all payments and meet all obligations required under this Agreement and any Supplements fully and promptly. Guarantor agrees that we may make other arrangements including compromise or settlement with the Customer named above. The Guarantor waives all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. We do not have to notify Guarantor if the Customer is in default. If the Customer defaults, Guarantor will immediately pay in accordance with the default provision of the Agreement all sums due under the terms of the Agreement and will perform all the obligations of the Customer under the Agreement. If it is necessary for us to proceed legally to enforce this guaranty, Guarantor expressly consents to the jurisdiction of the court set out in paragraph 15 and agrees to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against the Customer before enforcing this guaranty. By signing this guaranty, the Guarantor authorizes us to obtain personal credit bureau reports for credit and collection purposes.

X _____
Signature

Karl W. Schwarz
Print Name of Guarantor

8  29  07
Date

X REDACTED
Home Address of Guarantor

X REDACTED
Home Telephone Number of Guarantor

## ACCEPTANCE OF DELIVERY

You certify that all the equipment listed above has been furnished, that delivery and installation has been fully completed and satisfactory. Further, all conditions and terms of this agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects. You understand and agree that we have made payment for the equipment to the supplier, and you may contact the above supplier for your warranty rights, if any, which we transfer to you for the term of this Agreement.

| 1/18/2008 | Karl W. Schwarz, M.D., P.C. | X _____ | Chief Executive Officer |
|---|---|---|---|
| Date of Acceptance | Customer | Signature  Karl W. Schwarz | Title |

Rev. 02/06

Financer: Americorp Financial, LLC
877 South Adams Road
Birmingham, MI 48009
Telephone (248) 723-4500

# EQUIPMENT FINANCE AGREEMENT

| Agreement Number | 1434905 | | | | | Federal Tax ID # | REDACTED |
|---|---|---|---|---|---|---|---|

This document was written in "Plain English". The words "you" and "your" refer to the customer. The words "we", "us" and "our" refer to the financer.

## CUSTOMER INFORMATION

Karl W. Schwarz, M.D., P.C.

| FULL LEGAL NAME OF CUSTOMER | | | DBA | | | |
|---|---|---|---|---|---|---|
| REDACTED | Raleigh | NC | 27615 | Wake | | REDACTED |
| STREET ADDRESS | CITY | STATE | ZIP | COUNTY | | PHONE |

EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE)

## SUPPLIER INFORMATION

See Schedule A

| NAME OF SUPPLIER | STREET ADDRESS | | |
|---|---|---|---|
| | | | |
| CITY | STATE | ZIP | PHONE |

| QUANTITY | ITEM DESCRIPTION | SERIAL NUMBER |
|---|---|---|
| See Schedule A | | |

| TERMS | MONTHLY PAYMENT AMOUNT | ADVANCE PAYMENT |
|---|---|---|
| 60 | $1,416.78 including sales tax | $0.00        Received |
| Term in months | Payment Period is Monthly Unless Otherwise Indicated. Sales Tax is not included unless indicated above and it is the Customer's responsibility to pay all taxes. | |

**THIS IS A NONCANCELABLE/IRREVOCABLE AGREEMENT, THIS AGREEMENT CANNOT BE CANCELLED OR TERMINATED.**
**TERMS AND CONDITIONS**
(THIS AGREEMENT CONTAINS PROVISIONS SET FORTH ON PAGE TWO, ALL OF WHICH ARE MADE PART OF THIS AGREEMENT)

| FINANCER ACCEPTANCE | CUSTOMER AGREEMENT |
|---|---|
| DATED: December 31, 2007 | DATED: December 31, 2007 |
| FINANCER: Americorp Financial, LLC | CUSTOMER: Karl W. Schwarz, M.D., P.C. |
| SIGNATURE: | SIGNATURE: X |
| Steven F. Grant | Karl W. Schwarz |
| TITLE: CFO | TITLE: Chief Executive Officer |

## GUARANTY

As additional inducement for us to enter into the Agreement (including each Supplement), the undersigned ("Guarantor") jointly and severally unconditionally personally guarantees that the Customer will make all payments and meet all obligations required under this Agreement and any Supplements fully and promptly. Guarantor agrees that we may make other arrangements including compromise or settlement with the Customer named above. The Guarantor waives all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. We do not have to notify Guarantor if the Customer is in default. If the Customer defaults, Guarantor will immediately pay in accordance with the default provision of the Agreement all sums due under the terms of the Agreement and will perform all the obligations of the Customer under the Agreement. If it is necessary for us to proceed legally to enforce this guaranty, Guarantor expressly consents to the jurisdiction of the court set out in paragraph 15 and agrees to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against the Customer before enforcing this guaranty. By signing this guaranty, the Guarantor authorizes us to obtain personal credit bureau reports for credit and collection purposes.

| X | Karl W. Schwarz | 8 2 9 0 7 |
|---|---|---|
| Signature | Print Name of Guarantor | Date |

| X     REDACTED | X     REDACTED |
|---|---|
| Home Address of Guarantor | Home Telephone Number of Guarantor |

## ACCEPTANCE OF DELIVERY

You certify that all the equipment listed above has been furnished, that delivery and installation has been fully completed and satisfactory. Further, all conditions and terms of this agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects. You understand and agree that we have made payment for the equipment to the supplier, and you may contact the above supplier for your warranty rights, if any, which we transfer to you for the term of this Agreement.

| 12/31/07 | Karl W. Schwarz, M.D., P.C. | X | | Chief Executive Officer |
|---|---|---|---|---|
| Date of Acceptance | Customer | Signature | Karl W. Schwarz | Title |

Rev. 02/06

Financer:  Americorp Financial, LLC
877 South Adams Road
Birmingham, MI  48009
Telephone (248) 723-4500

# EQUIPMENT FINANCE
# AGREEMENT

**Agreement Number 1434906**                                      Federal Tax ID # REDACTED

This document was written in "Plain English". The words "you" and "your" refer to the customer. The words "we", "us" and "our" refer to the financer.

**CUSTOMER INFORMATION**

Karl W. Schwarz, M.D., P.C.

FULL LEGAL NAME OF CUSTOMER

| REDACTED | Raleigh | DBA<br>NC | 27615 | Wake | REDACTED |
|---|---|---|---|---|---|
| STREET ADDRESS | CITY | STATE | ZIP | COUNTY | PHONE |

EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE)

---

**SUPPLIER INFORMATION**

See Schedule A

NAME OF SUPPLIER                              STREET ADDRESS

| CITY | STATE | ZIP | PHONE |
|---|---|---|---|
| **QUANTITY**   **ITEM DESCRIPTION** | **SERIAL NUMBER** | | |

See Schedule A

---

**TERMS**

64
Term in months

**MONTHLY PAYMENT AMOUNT**

4 Payments at $0.00 followed by
60 Payments at $617.30 sales tax included
Payment Period is Monthly Unless Otherwise Indicated.
Sales Tax is not included unless indicated above and it is
the Customer's responsibility to pay all taxes.

**ADVANCE PAYMENT**

$ .00 Received

---

**THIS IS A NONCANCELABLE/IRREVOCABLE AGREEMENT, THIS AGREEMENT CANNOT BE CANCELLED OR TERMINATED.**
TERMS AND CONDITIONS
(THIS AGREEMENT CONTAINS PROVISIONS SET FORTH ON PAGE TWO, ALL OF WHICH ARE MADE PART OF THIS AGREEMENT)

**FINANCER ACCEPTANCE**
DATED:  October 22, 2008

FINANCER: Americorp Financial, LLC

SIGNATURE: _[signature]_
                Steven F. Grant
TITLE: _____ CFO

**CUSTOMER AGREEMENT**
DATED: _____ October 22, 2008

CUSTOMER: Karl W. Schwarz, M.D., P.C.
DBA:

SIGNATURE: **X** _[signature]_
                Karl W. Schwarz
TITLE: _____ President

---

**GUARANTY**

As additional inducement for us to enter into the Agreement (including each Supplement), the undersigned ("Guarantor") jointly and severally unconditionally personally guarantees that the Customer will make all payments and meet all obligations required under this Agreement and any Supplements fully and promptly. Guarantor agrees that we may make other arrangements including compromise or settlement with the Customer named above.  The Guarantor waives all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. We do not have to notify Guarantor if the Customer is in default. If the Customer defaults, Guarantor will immediately pay in accordance with the default provision of the Agreement all sums due under the terms of the Agreement and will perform all the obligations of the Customer under the Agreement. If it is necessary for us to proceed legally to enforce this guaranty, Guarantor expressly consents to the jurisdiction of the court set out in paragraph 14 and agrees to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against the Customer before enforcing this guaranty. By signing this guaranty, the Guarantor authorizes us to obtain personal credit bureau reports for credit and collection purposes.

**X** _[signature]_                    Karl W. Schwarz
Signature                         Print Name of Guarantor                October 22, 2008
                                                                          Date
                    REDACTED
Home Address of Guarantor              Home Telephone Number of Guarantor       REDACTED

---

**ACCEPTANCE OF DELIVERY**

You certify that all the equipment listed above has been furnished, that delivery and installation has been fully completed and satisfactory. Further, all conditions and terms of this agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects. You understand and agree that we have made payment for the equipment to the supplier, and you may contact the above supplier for your warranty rights, if any, which we transfer to you for the term of this Agreement.

| 10/22/08 | Karl W. Schwarz, M.D., P.C. | | **X** _[signature]_ | President |
|---|---|---|---|---|
| Date of Acceptance | Customer | DBA | Signature  Karl W. Schwarz | Title |

Page 1 of 2

Rev. 03/08

Financer: Americorp Financial, LLC
877 South Adams Road
Birmingham, MI 48009
Telephone (248) 723-4500

# EQUIPMENT FINANCE AGREEMENT

| Agreement Number 1434907 | Federal Tax ID # REDACTED |
|---|---|

This document was written in "Plain English". The words "you" and "your" refer to the customer. The words "we", "us" and "our" refer to the financer.

## CUSTOMER INFORMATION

Karl W. Schwarz, M.D., P.C.

| FULL LEGAL NAME OF CUSTOMER | | | DBA | | | |
|---|---|---|---|---|---|---|
| REDACTED | Raleigh | NC | 27615 | Wake | | REDACTED |
| STREET ADDRESS | CITY | STATE | ZIP | COUNTY | | PHONE |

EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE)

## SUPPLIER INFORMATION

See Schedule A

| NAME OF SUPPLIER | STREET ADDRESS | | |
|---|---|---|---|
| CITY | STATE | ZIP | PHONE |

| QUANTITY | ITEM DESCRIPTION | SERIAL NUMBER |
|---|---|---|
| See Schedule A | | |

## TERMS

**TERMS**
64
Term in months

**MONTHLY PAYMENT AMOUNT**
4 Payments at $0.00 followed by
60 Payments at $619.02 sales tax included
Payment Period is Monthly Unless Otherwise Indicated.
Sales Tax is not included unless indicated above and it is
the Customer's responsibility to pay all taxes.

**ADVANCE PAYMENT**
$.00 Received

**THIS IS A NONCANCELABLE/IRREVOCABLE AGREEMENT. THIS AGREEMENT CANNOT BE CANCELLED OR TERMINATED.**

**TERMS AND CONDITIONS**

(THIS AGREEMENT CONTAINS PROVISIONS SET FORTH ON PAGE TWO, ALL OF WHICH ARE MADE PART OF THIS AGREEMENT)

**FINANCER ACCEPTANCE**
DATED: May 29, 2008

FINANCER: Americorp Financial, LLC

SIGNATURE: _____
Steven F. Grant
TITLE: CFO

**CUSTOMER AGREEMENT**
DATED: May 29, 2008

CUSTOMER: Karl W. Schwarz, M.D., P.C.
DBA:

SIGNATURE: X _____
Karl W. Schwarz
TITLE: Chief Executive Officer

## GUARANTY

As additional inducement for us to enter into the Agreement (including each Supplement), the undersigned ("Guarantor") jointly and severally unconditionally personally guarantees that the Customer will make all payments and meet all obligations required under this Agreement and any Supplements fully and promptly. Guarantor agrees that we may make other arrangements including compromise or settlement with the Customer named above. The Guarantor waives all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. We do not have to notify Guarantor if the Customer is in default. If the Customer defaults, Guarantor will immediately pay in accordance with the default provision of the Agreement all sums due under the terms of the Agreement and will perform all the obligations of the Customer under the Agreement. If it is necessary for us to proceed legally to enforce this guaranty, Guarantor expressly consents to the jurisdiction of the court set out in paragraph 14 and agrees to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against the Customer before enforcing this guaranty. By signing this guaranty, the Guarantor authorizes us to obtain personal credit bureau reports for credit and collection purposes.

| X _____ | Karl W. Schwarz | May 29, 2008 |
|---|---|---|
| Signature | Print Name of Guarantor | Date |

| X REDACTED | X | REDACTED |
|---|---|---|
| Home Address of Guarantor | | Home Telephone Number of Guarantor |

## ACCEPTANCE OF DELIVERY

You certify that all the equipment listed above has been furnished, that delivery and installation has been fully completed and satisfactory. Further, all conditions and terms of this agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects. You understand and agree that we have made payment for the equipment to the supplier, and you may contact the above supplier for your warranty rights, if any, which we transfer to you for the term of this Agreement.

| May 29, 2008 | Karl W. Schwarz, M.D., P.C. | | X _____ | | Chief Executive Officer |
|---|---|---|---|---|---|
| Date of Acceptance | Customer | DBA | Signature  Karl W. Schwarz | | Title |

H:\Apps\WORD\COMPLETED DOCUMENTS 2008\Karl W. Schwarz, MD, PC-07.doc

Rev. 03/08

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
Raleigh Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Karl William Schwarz and Shauna Lynne Schwarz, | ) ) | Chapter 7 |
| | ) | Case No. 09-10206-8-SWH |
| Debtors. | ) | |
| ——————————————— | ) | |
| | ) | |
| Americorp Financial, L.L.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No.: 15-000440-8-SWH |
| | ) | |
| Karl William Schwarz and Shauna Lynne Schwarz | ) ) | |
| | ) | |
| Defendants. | | |

## AFFIDAVIT OF THOMAS X DUNIGAN, III, PRESIDENT OF AMERICORP FINANCIAL, L.L.C.

Thomas X. Dunigan, III, being first duly sworn, deposes and states as follows:

1.      I am a president of Americorp Financial, L.L.C. ("Americorp").

2.      I make this affidavit from my own personal knowledge and information, or information obtained from Americorp's records.

3.      Karl W. Schwarz, M.D., P.C. (the "Practice") was not in default of the primary obligations under the Agreements[1] on the Petition Date, and, to my knowledge, the Defendants bankruptcy case was completely unrelated to the Agreements or Karl Schwarz's ("Karl") guaranty of the Agreements.

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment on Complaint and for Partial Summary Judgment on Counterclaim.

4.      Americorp agreed to forbear from exercising its remedies under the Agreements against the Practice, subject to an assurance of future performance.

5.      The Forbearance Agreement provided financial accommodations to the Practice, including but not limited to, lowering the Practice's gross monthly payments, extending the lease payment terms, and waiving contractual damages, attorney fees, and default interest.

6.      The Forbearance Agreement Guaranty was prospective only, and did not obligate the Defendants for any obligation owed prior to their discharge.

7.      Americorp has never attempted to collect discharged debt from Defendant, Karl W. Schwarz ("Karl").

8.      Americorp did not threaten Karl with collection actions based upon the pre-petition guaranty of Agreements.

9.      Americorp did not send Karl dunning letters, make harassing phone calls, or approach Karl seeking repayment of any debt owed under the pre-petition Agreements.

10.     Even after the Practice defaulted under the Forbearance Agreement, Americorp still did not threaten Defendants with collection action, but instead filed this action.


FURTHER AFFIANT SAITH NOT.

— President

Subscribed and sworn to before me
this 9th day of September, 2016
Marie D Crook
Notary Public
My commission expires on:
7-22-19

MARIE D. CROOK
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Jul 22, 2019
ACTING IN COUNTY OF Oakland

2

204969881.4 06202/177166

# EXHIBIT C

## FORBEARANCE AGREEMENT AND GUARANTY

This Forbearance Agreement (this "Agreement") and accompanying Guaranty ("Guaranty") is made and entered into, as of June 12, 2013, by and among Americorp Financial, LLC, ("Financer"), Karl W. Schwarz, M.D., P.C. ("Customer"), and Karl W. Schwarz and Shauna L. Schwarz (collectively "Guarantor").

## RECITALS

The following recitals form the basis for and are a material part of this Agreement:

    A.    Financer is a Michigan limited liability company.

    B.    Customer is a medical practice located in Raleigh, North Carolina.

    C.    Guarantors are residents of Raleigh, North Carolina.

    D.    Between September 2007 and May 2008, Customer entered into seven (7) Equipment Finance Agreements with Financer for the acquisition of medical equipment, Nos. 1434901 through 1434907.  Each required specific monthly payments for a specified term of months  The remaining payments due under the Equipment Finance Agreements are shown on Exhibit A hereto, and shall be referred to as the "Customer's Liabilities."

    E.    Customer is past due on each of the Equipment Finance Agreements and is in Default.

    F.    In the event of Default, the terms of all of the Equipment Finance Agreements provide for Financer's recovery of the equipment, acceleration of all payments, and recovery of its reasonable attorneys' fees and costs incurred in enforcement.

    G.    The Financer has fully performed all acts it was required to perform pursuant to the terms of the Equipment Finance Agreements.

    H.    The terms of the Equipment Finance Agreements and the definitions set forth therein are incorporated into this Agreement by reference.

NOW, THEREFORE, in consideration of the premises, covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1.    <u>Affirmation of Recitals</u>.  Each of the parties hereto acknowledges and agrees that the foregoing recitals are true and correct and agrees that the Recitals are a part of this Agreement.

1

9019307.2 06202/087820

2.    Acknowledgments and Agreements.   Customer acknowledges and agrees, as of the date hereof, that:

(a)    the Customer's Liabilities are due and payable in full;

(b)    the Customer is in Default under the Equipment Finance Agreements;

(c)    as a result of the Defaults, the Financer may exercise all of its rights and remedies under the Equipment Finance Agreements;

(d)    the Financer has fully performed and satisfied its duties and obligations under the Equipment Finance Agreements;

(e)    the Financer has no obligation or otherwise to extend any financial accommodations to the Customer;

(f)    this Agreement is hereby deemed included in the Equipment Finance Agreements, the terms and enforceability of which are affirmed;

(g)    the security interests as defined in the Equipment Finance Agreements, if any, are valid, properly perfected, and first in priority; and

(h)    although the payment obligations under the Equipment Finance Agreements have been modified pursuant to this Agreement, the Equipment Finance Agreements remain and shall continue in full force and effect, except to the extent expressly modified hereby, and Customer hereby ratifies, affirms and confirms the Equipment Finance Agreements and all of its duties and obligations thereunder.

3.    Payment Accommodation.   In consideration of this Agreement and the provision of the Guaranty below, and subject to the provisions and requirements of this Agreement, Financer and Customer agree that in modification of Customer's original payment obligations under the Equipment Finance Agreements, and to lower the gross monthly payments and extend the payment term, commencing on July 1, 2013, the Customer shall one gross payment each month for a total of 38 months each in the amount of $4,500.00, on or before the 1st day of each month, in satisfaction of the Customer's Liabilities.

4.    Representations and Warranties.

(a)    Each of the parties hereto represents and warrants that the concepts embodied in this Agreement have been voluntarily and independently negotiated by and between the parties hereto, and each such party has had the opportunity to consult with legal counsel of such party's choosing, this Agreement is satisfactory to each of the parties to this Agreement, and each such party understands the terms of this Agreement and intends to fully perform and be bound by this Agreement.

(b)    Each of the parties hereto that is an entity represents and warrants that it is duly created, validly existing and in good standing under the laws of the state of its organization and that the party signing on behalf of it is authorized on its behalf to execute and deliver this

2

9019307.2 06202/087820

Agreement, and any other instrument executed and delivered in connection herewith, and upon such execution and delivery each such entity shall be bound by all such instruments.

(c)     Each of the parties hereto represents and warrants that such party has the legal right, power, capacity and authority to enter into and perform such party's covenants, obligations and agreements under this Agreement and the other instruments referenced herein and delivered pursuant hereto, all corporate, company, partnership and other actions required in connection with the authorization, execution, delivery and performance of this Agreement by such party have been duly taken and, when executed and delivered by such party, this Agreement shall constitute the legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms.

(d)     Each of the parties hereto represents and warrants that neither the execution and delivery of this Agreement, nor consummation of any of the transactions contemplated herein, nor compliance with the terms and provisions hereof, will contravene any provision of law, statute, rule or regulation to which such party is subject or any judgment, decree, license, order or permit applicable to such party, or will conflict or will be inconsistent with, or will result in any breach of any of the terms of the covenants, conditions or provisions of, or constitute a delay under any other obligation of such party.

(e)     Each of the parties hereto represents and warrants that no consent, approval, authorization or order of any court or governmental authority or third party is required in connection with the execution, delivery and performance by any party to this Agreement.

(f)     Customer hereby represents and warrants that it is solvent as of the date hereof and shall be solvent from the date hereof through and including the final payment on the Customer's Liabilities.

5.     <u>New Defaults</u>.  If any of the following (each occurrence, a "New Default") shall occur, then all of the Customers' Liabilities automatically and immediately shall become due and owing and the accommodation set for in **Section** 3 above, and the forbearance set forth in **Section 6** below, automatically and immediately shall terminate:

(a)     Failure to make a monthly payment when due under this Agreement.

(b)     Any breach of any kind or nature whatsoever of this Agreement by any Customer.

(c)     Other than the existing Customer Defaults, any Event of Default (as defined in the Equipment Finance Agreements).

6.     <u>Forbearance</u>.  So long as no New Default occurs from and after the date hereof, the Financer agrees to forbear from exercising any of its rights and remedies under the Equipment Finance Agreements.

7.     <u>Release</u>.  Customer and any person claiming through it hereby releases and discharges the Financer and its predecessors, successors, assigns, directors, officers, agents, employees, representatives, agents and attorneys (collectively, the "<u>Financer Releasees</u>") of and

3

from, and hereby waives and covenants not to bring any action against the Financer Releasees regarding, any and all claims, rights, actions, demands, injuries, damages, compensation, or causes of action of every kind and nature, whether foreseen or unforeseen, contingent or actual, liquidated or unliquidated, known or unknown, whether in tort or contract, which any Customer has against any of the Financer Releasees, or which might or could arise under state, federal, or local law, including common law.

8.    No Waiver. No failure or delay on the part of the Financer in exercising any of the Financer's rights or remedies under the Equipment Finance Agreements, this Agreement or existing at law or in equity shall operate as a waiver of any right or remedy of the Financer with respect to any obligations, including, without limitation, the Customers' Liabilities, owed to it, and no single or partial exercise of any right or remedy hereunder shall operate as a waiver or a preclusion to the exercise of any other rights or remedies the Financer may have under any agreement, document or instrument.

9.    Severability. If any provision of this Agreement is held to be unenforceable, in whole or in part, such holding will not affect the validity of the other provisions of this Agreement.

10.    Descriptive Headings. The descriptive headings herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.

11.    Parties in Interest. This Agreement shall be binding upon and inure to the benefit of each party hereto and each of their respective successors and assigns, and nothing in this Agreement is intended to confer upon any other person, whether or not named herein, any rights or remedies of any nature whatsoever under or by reason of this Agreement.

12.    Counterparts. This Agreement may be executed in any number of counterparts, by original or facsimile signature, each of which when executed and delivered shall be deemed an original, and such counterparts together shall constitute one instrument.

13.    Further Actions. The parties hereto hereby agree to execute and deliver all such documents and instruments and do all such other reasonable acts and things as may be necessary and appropriate to carry out the provisions of this Agreement.

14.    Amendment. This Agreement may not be amended except by an instrument in writing signed by the parties hereto.

15.    Contemporaneous Exchange.    Each of the parties hereto agrees that the transactions contemplated hereby constitute a contemporaneous exchange for new value.

[Remainder of page intentionally blank; signature page follows.]

4

IN WITNESS WHEREOF, the parties hereto have caused this Forbearance Agreement to be duly executed as of the day and year first set forth above.

**Americorp Financial, LLC, as Financer**

By: _____

Its: _C/F-O_____

**Karl W. Schwarz, M.D., P.C, as Customer**

By: _K._____

Its: _President_____

## JOINT GUARANTY OF FORBEARANCE AGREEMENT

As a necessary inducement for Financer to enter into the above Forbearance Agreement the undersigned Karl W. Schwarz and Shauna L. Schwarz ("Guarantors") unconditionally and personally guarantee that Karl W. Schwarz, M.D., P.C, as Customer, will make all payments and meet all obligations required under the above Forbearance Agreement AND WILL MEET ANY AND ALL DEBTS, LIABILITIES AND OBLIGATIONS OF EVERY NATURE OR FORM, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED fully and promptly. Guarantors agree that Financer may make other arrangements including compromise or settlement with Customer, Guarantors waive all defenses and notice of those changes, and will remain ultimately responsible for the payment and obligations of Customer under the Forbearance Agreement. Financer does not have to notify Guarantors if Customer is in default. If Customer defaults, Guarantors will immediately pay in accordance with the default provision of the Forbearance Agreement all sums due under its terms, and will perform all the obligations of Customer under the Forbearance Agreement. Guarantors expressly consent to the jurisdiction of the courts of Michigan, and agree to pay all costs, including attorney fees, incurred in enforcement of this guaranty. It is not necessary for Financer to proceed first against Customer before enforcing this guaranty. By signing this guaranty, Guarantors authorize Financer to obtain personal credit bureau reports for credit and collection purposes.

_K._____          _____
Karl W. Schwarz                                    Shauna L. Schwarz

State of _North Carolina_

County of _Wake_

The foregoing was subscribed and sworn to, before me, on this _12th_ day of _June_, 20_13_.

X_____
**Notary Public**
My Commission expires _July 23, 2016_

5

9019307.2 06202/087820

# EXHIBIT A

14349-1; $13,764.53 balance, with 13 payments remaining plus late fees. $1,058.81 per month

14349-2; $30,626.56 balance, with 16 payments remaining plus late fees. $1,914.16 per month

14349-3; $22,046.79 balance, with 17 payments remaining plus late fees. $1,296.87 per month

14349-4; $26,302.06 balance, with 17 payments remaining plus late fees. $1,547.18 per month

14349-5; $26,132.40 balance, with 17 payments remaining plus late fees. $1,537.20 per month

14349-6; $13,580.60 balance, with 22 payments remaining plus late fees. $617.30 per month

14349-7; $10,523.34 balance, with 17 payments remaining plus late fees. $619.02 per month

6